IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EQUITESA EQUIPOS Y TERRENOS, SA, ) | CASE NO. 1:10-cv-01555 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| VALLEY ENTERPRISES OF OHIO, LLC, ) | |
| *et al.*, ) | |
| ) | **MEMORANDUM OPINION & ORDER** |
| Defendants. ) | |

## I. Procedural Background

On July 15, 2010, Plaintiff Equitesa Equipos y Terrenos, S.A. (hereinafter "Plaintiff") filed its Complaint. (ECF No. 1.) On July 20, 2010, Plaintiff filed a verified Complaint against Defendants Valley Enterprises of Ohio, LLC ("Valley Enterprises"), Deborah Fuetter ("Mrs. Fuetter"), and Kurt Fuetter ("Mr. Fuetter"). (ECF No. 3.) Plaintiff alleged the following counts: (1) breach of contract identified as Exhibit A against Valley Enterprises; (2) fraud sufficient to pierce the corporate veil against both Fuetters; (3) fraud against Mr. Fuetter; (4) conversion against Valley Enterprises and Mr. Fuetter; (5) seeking enforcement of a promissory note, identified as Exhibit B; and (6) seeking enforcement of a promissory note, identified as Exhibit C.

On May 31, 2011, Defendants filed a Motion for Summary Judgment. (ECF No. 23.) After being fully briefed, the motion is now ripe for consideration.

## II. Summary of Facts

Despite discovery ending on April 29, 2011, the parties have attached very little by way of factual evidence to their briefs. No depositions have been filed with the Court.

On or about July 9, 2009, Plaintiff and Valley Enterprises entered into a contract, attached to the Complaint as Exhibit A, for the delivery of 170,000 metric tons of Portland grade cement to the Port of Manta, Ecuador – the location of Plaintiff's construction business.[1] (ECF No. 1, Exh. A; ECF No. 12; ECF No. 23-1 at ¶9.) Mr. Fuetter, president and sole shareholder of Valley Enterprises, procured what he believed to be a cement supplier from Spain – Patois Agencia-Madrid ("Patois") – to facilitate delivery.[2] (ECF No. 23-1 at ¶¶1, 4.) On July 21, 2009, Valley Enterprises entered into a contract with Patois and Logitech. (ECF No. 23-1 at ¶7.)

Valley Enterprises received $1,110,000.00 from Plaintiff for the purchase of cement, of which $424,000.00 was wired to Patois and Logitech. (ECF No. 23-1 at ¶7.) In August of 2009, Mr. Fuetter, along with business associate Warren Jones ("Jones"), traveled to Spain to oversee the cement shipment. (ECF No. 23-1 at ¶10.) After unsuccessful attempts to meet with a representative of Patois, Mr. Fuetter became concerned that Patois and Logitech were operating a scam. (ECF No. 23-1 at ¶11.) He had Jones contact the United States Federal Bureau of

---

[1] Contrary to Exhibit A, which appears to have been signed on July 9, 2009, and Mr. Fuetter's affidavit, the Complaint states that the contract was entered into on September 9, 2009, making it after the alleged breach occurred. (ECF Nos. 1 & 3 at ¶2.) In their Answer, "Defendants admit that Valley Enterprises of Ohio, LLC executed the document attached to Plaintiff's Complaint as Exhibit A," but deny that the summary of the document set forth in paragraph 2 of the Complaint is complete and accurate. (ECF No. 12 at ¶2.)

[2] An escrow company named Logitech Investments ("Logitech") was also involved in the transaction. (ECF No. 23-1 at ¶4.)

Investigation (FBI) in Madrid, Spain. (ECF No. 23-1 at ¶13.) On August 10, 2009, the FBI informed Mr. Fuetter that Patois and Logitech were, indeed, fraudulent companies. (ECF No. 23-1 at ¶14.)

Mr. Fuetter informed Gabriel Verduga, a representative of Plaintiff, of the scam perpetrated by Patois and Logitech. (ECF No. 23-1 at ¶15; ECF No. 25-4.) It is unclear precisely when this information was transmitted. Mr. Fuetter asserts that he did so on August 14, 2009 – four days after he learned of the fraud from the FBI. (ECF No. 23-1 at ¶15.) Without making any allegation about Patois or Logitech, Plaintiff argues that Mr. Fuetter became aware of the fraud before requesting and accepting final payment from Plaintiff on August 5, 2009. (ECF No. 1 at ¶¶14-20.) This is the basis of Plaintiff's fraud claim against Mr. Fuetter. A partial email attached to Plaintiff's brief in opposition appears to confirm that Mr. Fuetter informed Gabriel Verduga of the fraud. (ECF No. 25-4, Exh. D.) The date, however, is uncertain.[3] *Id*. In the email fragment, Mr. Fuetter represented that he was in contact with a "REAL producer" of cement. *Id*. In another email dated August 19, 2009, Mr. Fuetter indicated that he was then working with some "other supplier of cement" in Europe. (ECF No. 25-1, Exh. A.)

In September of 2009, Valley Enterprises refunded $410,000.00 to Plaintiff. (ECF No. 23-1 at ¶16.) Mr. Fuetter asserts that Valley Enterprises returned "a total of $569,507.48 to [Plaintiff]." (ECF No. 23-1 at ¶22.)

On December 23, 2009, Mr. Fuetter was contacted by agents of the Plaintiff, who insisted that they meet at a local hotel. (ECF No. 23-1 at ¶17.) One of the agents stated that he was also

---

[3] The emails attached to Plaintiff's brief in opposition, sworn to as accurate copies kept in the ordinary course of business by Pedro Verdugo Coello (ECF No. 25-6), appear to be incomplete fragments. Their evidentiary value is questionable.

a representative of the government of Ecuador. (ECF No. 23-1 at ¶18.) According to Mr. Fuetter, he was told that if he did not sign two promissory notes in favor of Pedro Verdugo Cevallos, the agents would immediately go to his house to see his wife. (ECF No. 23-1 at ¶19.) Though he denies owing any debt personally to either Plaintiff or Pedro Verdugo Cevallos, Mr. Fuetter signed the promissory notes, claiming he felt intimidated. (ECF No. 23-1 at ¶¶20-21.) In an affidavit attached to Plaintiff's brief in opposition, one Tomislav Topic attests that he was present on December 23, 2009, when the promissory notes were signed. (ECF No. 25-7.) Topic further states that Mr. Fuetter signed the promissory notes of his own free will; that Mr. Fuetter did not offer any indication of discomfort; and, that Topic did not perceive any circumstances that would have led Mr. Fuetter to reasonably believe that he was under threat or undue compulsion. *Id*.

### III. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) governs summary judgment motions and states:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

In considering summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Summary judgment is appropriate whenever the non-moving party fails to make a

showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989)(*citing Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Liberty Lobby*, 477 U.S. at 257.

In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

### IV. Law and Analysis

**A. Breach of Contract**

In Count One of the Complaint, Plaintiff raises a breach of contract claim against

5

Defendant Valley Enterprises. (ECF Nos. 1 & 3.) The contract is attached to the Complaint as Exhibit A. (ECF No. 1.) Defendants admit that Mr. Fuetter executed the document as President of Valley Enterprises. (ECF No. 12 at ¶2.) Although Defendants' motion for summary judgment appears to seek judgment in their favor as to all of Plaintiff's claims, they make no argument as to why they should be granted summary judgment as to the breach of contract claim against Valley Enterprises. In fact, at one point, Defendants seemingly concede that "Plaintiff may be entitled to contractual damages against Valley Enterprises." (ECF No. 23 at 9.) Furthermore, it appears undisputed that Valley Enterprises entered into the contract, but supplied no cement to Plaintiff. As such, Defendants' motion for summary judgment with respect to the breach of contract claim against Valley Enterprises is denied.

**B.  Piercing the Corporate Veil**

In Count Two of the Complaint, Plaintiff alleges that Mr. and Mrs. Fuetter should be held personally liable for any breach of contract committed by Valley Enterprises, because Valley Enterprises was essentially their alter ego and their control of the corporation was used to commit a fraud or illegal act. (ECF Nos. 1 & 3.) In their Answer, Mr. and Mrs. Fuetter admit that they are the sole and/or majority shareholders of Valley Enterprises. (ECF No. 12 at ¶8.) They deny the remaining allegations in Count Two. *Id*. In his affidavit, Mr. Fuetter indicates that he is the sole shareholder of Valley Enterprises. (ECF No. 25-1.)

Pursuant to Ohio law, the corporate form may be disregarded and the so-called "corporate veil" pierced under the following circumstances:

> [T]he corporate form may be disregarded and individual shareholders held liable
> for corporate misdeeds when (1) control over the corporation by those to be held
> liable was so complete that the corporation has no separate mind, will, or
> existence of its own, (2) control over the corporation by those to be held liable

was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity,[4] and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.

*Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 617 N.E.2d 1075, 1086 (Ohio 1993).

In their motion for summary judgment, Defendants argue that Plaintiff has neither properly alleged nor presented any evidence that demonstrates Mr. and Mrs. Fuetter's control of Valley Enterprises was so complete that it would justify piercing the corporate veil. (ECF No. 23 at 5-9.) The Fuetters, by way of affidavit, assert that they observed all corporate formalities, including the maintenance of separate bank accounts, and the filing of separate tax returns. (ECF No. 23-1 at ¶¶2-3; ECF No. 23-2 at ¶¶2-3.) They expressly deny commingling funds. *Id*. Furthermore, Defendants argue that they have not committed a fraud, or an illegal or unlawful act. (ECF No. 23 at 8-9.) To the contrary, they assert that they were the victims of fraud perpetrated by third parties Patois and Logitech. (ECF No. 23 at 8-9.)

Conversely, Plaintiff argues that Mr. Fuetter and his associate Warren Jones falsely stated that the cement had been loaded and was in transit to Ecuador despite having doubts about the supplier's veracity as early as August 3, 2009. (ECF No. 25 at 5-6.) Plaintiff, in reliance on these assurances, claims it tendered an additional $310,000 payment to Valley Enterprises on

---

[4] "The second prong of *Belvedere* is disjunctive and requires proof of fraud *or* illegality." *Music Express Broad. Corp. v. Aloha Sports, Inc.*, 161 Ohio App. 3d 737, 742, 831 N.E.2d 1087, 1091 (Ohio Ct. App., 2005) ("Fraud therefore is not sine qua non for disregarding the corporate structure."); *see also Dombroski v. Wellpoint, Inc.*, 895 N.E.2d 538, 119 Ohio St. 3d 506, 513 (Ohio 2008) ("[T]o fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, *or a similarly unlawful act*.") (emphasis added).

August 5, 2009. *Id.* Assuming for the sake of argument that the Fuetters engaged in activity that amounted to a fraud or illegal act under the second prong of *Belvedere* (which resulted in an injury under the third prong), to justify piercing the corporate veil the first prong of the *Belvedere* test must be also be satisfied. *See, e.g., Thompson v. Thompson*, 2011 Bankr. LEXIS 3692 (Bankr. S.D. Ohio Sept. 30, 2011) (explaining that the elements of proof necessary to pierce the corporate veil are described by the Ohio Supreme Court in the conjunctive and require a plaintiff to prove all three elements in order to prevail); *Olzens v. Lapuh*, 2008 Ohio App. LEXIS 3624, 2008-Ohio-4303 at ¶41 (Ohio Ct. App. Aug. 22, 2008) (finding that the *Belvedere* test is conjunctive and all three prongs must be satisfied); *S. Atl. Neurology and Pain Clinic, P.C. v. Lupo*, 353 B.R. 534, 542 (Bankr. N.D. Ohio 2006) ("The three-part *Belvedere* test is a conjunctive test, therefore requiring a plaintiff to satisfy all three prongs to pierce the corporate veil of a corporation.")

Therefore, to survive summary judgment, there must be a genuine issue of material fact as to whether the individuals and corporation are fundamentally indistinguishable. *See, e.g., Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005).[5] Ohio courts consider the following factors when deciding whether the first element of the *Belvedere* test is satisfied:

> (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s).

---

[5] "The first element [of the *Belvedere* test] is a restatement of the alter-ego doctrine, which requires that plaintiff 'show that the individual and the corporation are fundamentally indistinguishable.'" *Taylor Steel*, 417 F.3d at 605 (6th Cir. 2005)(*quoting Belvedere*, 617 N.E.2d at 1086).

*Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005) (*quoting LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App. 3d 417, 602 N.E.2d 685, 689 (Ohio Ct. App. 1991); *see also Carter-Jones Lumber Co. v. LTV Steel Co.*, 237 F.3d 745, 749 (6th Cir. 2001) (applying Ohio law) ("[B]ecause of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive.")

At the summary judgment stage, Plaintiff may not rely on its legal conclusions in the Complaint, even if verified. "Although statements in a verified complaint may function as the equivalent of affidavit statements for purposes of summary judgment, *see Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992), affidavit statements must be based on personal knowledge." *Weberg v. Franks*, 229 F.3d 514, 526, n. 13 (6th Cir. Mich. 2000). Furthermore, "[l]egal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial." *Padgett v. Caruso*, 2011 U.S. Dist. LEXIS 116810 (W.D. Mich., Aug. 17, 2011) (*citing Medison Am., Inc. v. Preferred Med. Sys.. LLC*, 357 Fed. Appx. 656, 662 (6th Cir. 2009) (rejecting non-moving party's reliance on its verified complaint as proof that a genuine issue of material fact remained where the complaint offered legal conclusions rather than testimony)). Plaintiff has an *affirmative duty* to point out *specific facts in the record* which create a genuine issue of material fact that could show the Fuetter's control over the corporation was so complete that the corporation had no separate mind, will, or existence of its own. Plaintiff has failed to do so.[6] Although Mr. Fuetter admittedly held

---

[6] Plaintiff's brief asserts that "Plaintiff has offered credible, unopposed evidence that Kurt and Deborah Fuetter completely controlled the actions of Valley throughout the within transaction." (ECF No. 25 at 7.) To the contrary, Plaintiff has not offered any evidence to support its conclusory statement. Moreover, as Mr. Fuetter is the president of Valley Enterprises, it is expected that he would act on its behalf during the transaction.

ultimate control over Valley Enterprises, the Court, due to the paucity of evidence on this issue, cannot find that his control was so complete that the corporation had no separate mind, will, or existence of its own. The only evidence of record on this issue are the affidavits of the Fuetters. There is no evidence that the Fuetters used Valley Enterprises's accounts as their own private source of funds or otherwise diverted corporate funds, assets, or property to themselves. The Fuetters aver that they maintained corporate formalities, including the maintenance of books of account and the filing of separate tax returns.[7]

Plaintiff has also failed to provide any evidence that the Fuetters held themselves out as personally liable for Valley Enterprise's corporate obligations. Finally, there is no evidence that Valley Enterprises was undercapitalized from its inception. While Mr. Fuetter admits to being the sole shareholder of Valley Enterprises, that fact alone is insufficient to satisfy the first prong of the *Belvedere* test. *See, e.g., State ex rel. Rogers v. S&R Recycling, Inc.*, 2011 Ohio App. LEXIS 2855, 2011-Ohio-3371 at ¶30 (Ohio Ct. App., June 30, 2011) (the fact that defendants were the sole shareholders did not alone prove that their control was so complete that the corporation had no separate mind, will, or existence of its own.); *Zimmerman v. Eagle Mortg. Corp.*, 110 Ohio App. 3d 762, 771 (Ohio Ct. App., 1996)("A corporation is a separate legal entity from its shareholder even where there is only one shareholder in the corporation.")

Therefore, as Plaintiff has failed to point to any facts that would allow the corporate veil of

---

Even construing Plaintiff's statement as true, it does not create a genuine issue of material fact as to the first element of the *Belvedere* test. If such were the case, essentially every incorporated small family run business would be subject to piercing.

[7] Though the Court recognizes that the Fuetters' affidavits could be self-serving, there simply is no other evidence of record on this issue that could be construed in Plaintiff's favor. Plaintiff may not rely on legal conclusions in the pleadings to rebut this evidence.

10

Valley Enterprises to be pierced, Defendants' motion for summary judgment is granted as to Count Two of the Complaint.

**C.     Fraud**

In Count Three of the Complaint, Plaintiff appears to raise a claim of fraud against Mr. Fuetter. (ECF No. 1 & 3 at ¶¶13-21.) According to Ohio law, in order to maintain a cause of action for fraud, a plaintiff must demonstrate the following:

> (a) a representation or, where there is a duty to disclose, concealment of a fact;
> (b) which is material to the transaction at hand; (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the representation or concealment; and (f) a resulting injury proximately caused by the reliance.

*Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 10 Ohio St. 3d 167, 169 (Ohio 1984) (citations omitted); *accord Magical Farms, Inc. v. Land O'Lakes, Inc.*, 356 Fed. Appx. 795 (6th Cir. 2009); *David A. Flynn, Inc. v. GMAC*, 2008 U.S. Dist. LEXIS 41597 (N.D. Ohio May 23, 2008). "The elements of the claim are conjunctive, and accordingly all of them must be shown." *Graham v. Am. Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003).

Plaintiff's verified Complaint alleges that Mr. Fuetter falsely, and with the intent to mislead Plaintiff, represented that the cement was in transit to Mantua, Ecuador causing Plaintiff to deliver substantial sums of money to Defendant Valley Enterprises. (ECF No. 1 & 3 at ¶¶13-21.) While Defendants' motion for summary judgment asserts that Plaintiff has failed to set forth sufficient evidence of fraud to pierce the corporate veil, it does not directly address Plaintiff's claim of fraud against Mr. Fuetter. Mr. Fuetter's affidavit indicates that upon his August of 2009 arrival in Spain, he began to worry that Patois and Logitech were operating a scam. (ECF No. 23-1 at ¶¶10-11.) He had Warren Jones contact the FBI. *Id.* at ¶13. On

11

August 10, 2009, Mr. Fuetter learned that Patois and Logitech were fraudulent companies. *Id*. at ¶14. Mr. Fuetter avers that he informed Plaintiff of this four days later. *Id*. at ¶15.

Exhibit E, attached to Plaintiff's brief in opposition to summary judgment, is purported to be a Disclosure of Defendant Valley Enterprises summarizing the timeline of events.[8] (ECF No. 25 at 5.) The timeline indicates Mr. Fuetter arrived in Spain on July 20, 2009 and that Defendants requested that Patois and Logitech return all funds as early as August 3, 2009.[9] If the timeline is accurate, emails from Mr. Fuetter's associate, Warren Jones, sent on August 4, 2009, that appear to solicit additional funds for the completion of the transaction with Patois might be considered false representations. (ECF No. 25-3, Exh. C.) However, the timeline, Exhibit E, is unsworn and its origin is not clear.

Federal Rule of Civil Procedure 56 was amended in 2010. It now requires that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

---

[8] Defendants' reply brief does not dispute this assertion. (ECF No. 26.)

[9] There are clear discrepancies between Mr. Fuetter's affidavit and the timeline he allegedly provided to Plaintiff. In addition to the discrepancy regarding the date of his arrival in Spain, the timeline also indicates that: (1) money was wired to Patois and Logitech between July 14 and July 20, 2009; and, (2) Mr. Fuetter flew to Spain on July 20, 2009 to oversee the loading of cement. (ECF No. 25-5, Exh. E.) This information is difficult to reconcile with the affidavit, which states that Valley Enterprises did not enter into a contract with Patois and Logitech until July 21, 2009. (ECF No. 25-5, Exh. E; ECF No. 23-1 at ¶7.)

>admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). However, the Court does not construe any changes to Federal Rule of Civil Procedure 56 as abolishing the requirement that documents submitted in support of or in opposition to a motion for summary judgment must be sworn documents of evidentiary quality. *See Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 481 (6th Cir. 2008) (holding that the district court "improperly considered" unsworn, hearsay evidence in deciding to grant a motion for summary judgment.); *accord Pruitt v. Habib*, 2011 U.S. Dist. LEXIS 2738 (W.D. Ky., Jan. 11, 2011) ("Unsworn documents or reports cannot be considered in a motion for summary judgment."); *Fox v. Brown Mem. Home, Inc.*, 2010 U.S. Dist. LEXIS 131543 (S.D. Ohio, Dec. 2, 2010) (finding that an unsworn document and was not properly before the Court for consideration in connection with a motion for summary judgment).

Aside from the timeline, no other document indicates that Mr. Fuetter suspected a fraud prior to the receipt of an additional $310,500 from Plaintiff on August 5, 2009. The email documents submitted by Plaintiff, while difficult to follow, only indicate that Mr. Fuetter attempted to procure a different supplier after the fraud was communicated to Plaintiff on August 14, 2009. (ECF No. 25, Exh. A.) On August 19, Mr. Fuetter apparently emailed Gabriel Verduga that "the other supplier of the cement is from Europe we are working with. Again we are dealing now directly with the producer." (ECF No. 25-1, Exh. A.) In a fragment email that contains discussion of the original fraud, Mr. Fuetter stated that "We will do what ever we have to do to get you the cement. I hope to know late today again from REAL producer on when we can ship to you. What I am trying to see is at what price I have to pay to replace the cement we were to get." (ECF No. 25-4, Exh. D.) Also on August 19, Mr. Fuetter wrote that "[i]t looks

like we can start loading a cement ship middle of next week." (ECF No. 25-4, Exh. D.) None of these statements contain any information that cement had actually been shipped.

Nevertheless, the verified Complaint alleges that "Kurt Fuetter represented to Plaintiff that a substantial portion of the Portland cement to be delivered by Valley to Plaintiff was in transit to the port of Manta, Ecuador and demanded the progress payment required under the terms of the contract be wired by Plaintiff to Valley." (ECF No. 1 at ¶14.) This allegation does constitute a factual allegation verified as true and correct. Therefore, it functions as the equivalent of an affidavit for purposes of summary judgment, and cannot be ignored.[10] *See Weberg*, 229 F.3d at n. 13. As no cement was ever shipped, a genuine issue of material fact remains as to whether Mr. Fuetter made such a false statement, and whether the statement was knowingly false at the time it was made or with reckless disregard as to whether it was false. Though the allegation in the verified Complaint is imprecise as to the time such representation was made, making all reasonable inferences in favor of the non-moving party, it must have been made prior to the last wired payment, which appears to have occurred on August 5, 2009. The circumstantial evidence is sufficient for a reasonable juror to infer that the representation was made by Mr. Fuetter with the intent to induce Plaintiff to wire additional sums to Valley Enterprises and that Plaintiff justifiably relied upon the representation. Finally, as $116,492.52 – exclusive of the money fraudulently retained by Patois and/or Logitech – is unaccounted for, there is a genuine issue of material fact as to whether Plaintiff was injured by its remittance of

---

[10] The *Weberg* court disregarded many of plaintiff's allegations because they were not made with plaintiff's personal knowledge, or were otherwise based on hearsay. *Id.* (*citing Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)). There is no indication that this factual allegation is based on hearsay. Whether the allegation is credible is a question for a jury.

additional funds in reliance upon Mr. Fuetter's representation that cement had been shipped.

Therefore, Defendants' motion for summary judgment is denied with respect to Plaintiff's third claim for relief.

**D. Conversion**

In Count Four of the Complaint, Plaintiff raises a conversion claim against Defendant Valley Enterprises and Mr. Fuetter. (ECF Nos. 1 & 3 at ¶26.) Once again, though Defendants' motion for summary judgment seeks judgment in their favor as to all of Plaintiff's claims, Defendants make no argument as to why they should be granted summary judgment as to the conversion claim.

Under Ohio law, a cause of action for conversion arises where a defendant: (1) wrongfully exercises dominion or control; (2) over the property of the plaintiff; and, (3) in a manner inconsistent with plaintiff's rights of ownership. *See Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 456, 47 Ohio St.2d 224, 226 (Ohio 1976) (observing that even some intangible rights may be converted) *rev'd on other grounds* 433 U.S. 562, 97 S. Ct. 2849 (1977); *accord Joyce v. Gen. Motors Corp.*, 551 N.E.2d 172, 175, 49 Ohio St.3d 93 (Ohio 1990); *Am. Chem. Soc'y v. Leadscope, Inc.*, 2005 Ohio App. LEXIS 2428, 2005-Ohio-2557 at ¶24 (Ohio Ct. App. 2005). To prove conversion, a plaintiff "need not demonstrate intent or wrongful purpose or an assertion of ownership by defendant." *Taylor v. First Nat'l Bank of Cincinnati*, 508 N.E.2d 1006, 31 Ohio App.3d 49 (Ohio Ct. App. 1986). A plaintiff can maintain a claim for conversion of money if the funds are specifically identified, are held in trust, or are withheld by a person owing a fiduciary duty to the plaintiff. In the absence of these factors, as the Ohio Supreme Court noted in *Staley v. Kreinbihl*, 89 N.E.2d 593, 597, 152 Ohio St. 315, 321-322 (Ohio 1949),

the plaintiff is merely a general creditor. *See also Haul Transp. of Va., Inc. v. Morgan*, 1995 Ohio App. LEXIS 2240 at **11-12 (Ohio Ct. App. 1995).

According to Mr. Fuetter's own affidavit, Plaintiff sent $1,110,000.00 to Valley Enterprises for the purchase of cement. (ECF No. 23-1 at ¶9.) Mr. Fuetter avers that $424,000.00 was wired to Patois and Logitech, while Valley Enterprises returned $569,507.48 to Plaintiff after learning of the scam. (ECF No. 23-1 at ¶¶9 & 22.) There is, therefore, an outstanding balance of $116,492.52 which is unaccounted for. A jury could find that either Mr. Fuetter or Valley Enterprises wrongfully retained these funds. Moreover, given the complete lack of argument from Defendants as to why they are entitled to summary judgment on the conversion claim, the Court declines to grant summary judgment. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).

**E. Promissory Notes**

In Counts Five and Six, Plaintiff seeks to enforce two promissory notes, attached to the Complaint as Exhibits B and C. (ECF No. 1.) Defendants seek summary judgment arguing that: (1) the promissory notes are not executed in favor of Plaintiff; (2) the promissory notes lack consideration; and, (3) the promissory notes are invalid, being executed under duress. (ECF No. 23 at 9-12.)

There is no dispute that the promissory notes were executed in Ohio. The notes themselves

16

contain language indicating that the instruments will "be enforced in accordance with the laws of the State of Ohio." Both promissory notes are executed in favor of Pedro Verduga Cevallos. (ECF No. 1.) They expressly state "pay to the order of Pedro Verduga Cevallos." *Id*. Neither promissory note makes any mention of Plaintiff, Equitesa Equipos y Terrenos, SA. Pedro Verduga Cevallos is not a plaintiff in this action. Plaintiff's brief in opposition does not address Defendant's argument that Plaintiff is not the holder of the promissory notes because there is no evidence of transfer. (ECF No. 25 at 8-9.)

It is uncontested that "a promissory note is by definition and purpose a negotiable instrument: 'a written promise to pay a certain sum of money at a future time, unconditionally.'" *Gordon v. Koltnow*, 2004 Ohio App. LEXIS 5386, 2004-Ohio-5954 at ¶7 (Ohio Ct. App., Nov. 10, 2004) (*quoting Burke v. State*, 104 Ohio St. 220, 222, 135 N.E. 644 (Ohio 1922); O.R.C. 1303.03(A) & (E)(1).

Pursuant to O.R.C. § 1301.01(T)(1), a "'Holder' with respect to a negotiable instrument means either of the following: (a) If the instrument is payable to bearer, a person who is in possession of the instrument; (b) If the instrument is payable to an identified person, the identified person when in possession of the instrument." The verified Complaint asserts that Plaintiff is the holder. (ECF No. 1, 3 at ¶¶29, 33.) However, such allegation, even if sworn to, does not constitute a factual allegation, but rather a legal conclusion that is contrary to the instrument's express language. *Medison Am., Inc.*, 357 Fed. Appx. at 662; *accord Padgett*, 2011 U.S. Dist. LEXIS 116810. It is apparent from the promissory notes that they are both instruments that are payable to an identified person, and not simply to the bearer of the instrument. As such, the legal conclusion in the Complaint, even though verified by the notes'

payee, does not create a genuine issue of material fact. Therefore, there is no evidence in the record upon which a reasonable juror could find that Plaintiff was a "holder" of the promissory notes under Ohio law.

Nevertheless, "[a]n instrument is transferred when it is delivered by a person other than its issuer *for the purpose of giving to the person receiving delivery the right to enforce the instrument*." O.R.C. § 1303.22(A) (UCC 3-203) (emphasis added). Regardless of whether or not a transfer constitutes a "negotiation," the transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course..." O.R.C. § 1303.22(B). As explained in the official commentary to Uniform Commercial Code § 3-203:

> If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. ***Because the transferee's rights are derivative of the transferor's right's those rights must be proved. Because the transferee is not a holder, there is no presumption under section 3-308 that the transferee, by producing the instrument, is entitled to payment***. The instrument, by its terms, is not payable to the transferee and the transferee must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it. Proof of a transfer to the transferee by a holder is proof that the transferee has acquired the rights of a holder. At that point the transferee is entitled to the presumption under section 3-308.

(Emphasis added).

Plaintiff bears the burden of proving that the promissory notes were "transferred" within the meaning of O.R.C. § 1303.22(A). Although Pedro Verduga Cevallos is purportedly Plaintiff's president and verified the Complaint, the Court cannot, in the absence of any corroboration, presume that a transfer occurred. The mere production of the instrument is

insufficient, and there is no evidence of an indorsement. Defendants have challenged Plaintiff's right to enforce the promissory notes by pointing to the language of the notes themselves, as well as the complete absence of evidence that a transfer occurred. Defendants are entitled to summary judgment as Plaintiff has not pointed to any evidence that would allow a rational trier of fact to: (1) find that Plaintiff was the holder; or, (2) find that notes were transferred from Pedro Verduga Cevallos to Plaintiff for the purpose of giving the latter the right of enforcement.

As such, Defendants' motion for summary judgment with respect to Counts Five and Six of the Complaint is granted.

## V. Conclusion

Defendants' Motion for Summary Judgment (ECF No. 23) is GRANTED in part and DENIED in part. Specifically, Defendants' motion for summary judgment is granted with respect to the Second, Fifth, and Sixth claims for relief. Plaintiff's First, Third, and Fourth claims for relief survive.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: November 3, 2011